UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CAPITAL ONE, N.A., d/b/a/ CAPITAL ONE
AUTO FINANCE,

                Plaintiff,                  **MEMORANDUM & ORDER**
                                                  2:16-CV-6534 (PKC) (SIL)

      - against -

AUTO GALLERY MOTORS, LLC,
SMITHTOWN CHEVROLET, LLC, and
DENNIS SCHWARTZ,

                Defendants.
-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

Plaintiff Capital One Auto Finance ("C.O.A.F.") brings this suit against Defendants Auto Gallery, Smithtown Chevrolet, and Dennis Schwartz,[1] alleging breach of contract and fraudulent misrepresentation. (Complaint, Dkt. 1.) Before the Court is Plaintiff's motion for partial summary judgment against Defendant Auto Gallery. For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

**I.    Relevant Facts[2]**

Plaintiff and Auto Gallery entered into a Dealer Agreement on June 21, 2007, which covered all business between Plaintiff and Auto Gallery. (Plaintiff's Statement of Material Facts

---

[1] Smithtown Chevrolet and Dennis Schwartz were served but never appeared in court. (Dkts. 9−10.)

[2] Defendant Auto Gallery failed to respond to Plaintiff's motion for summary judgment. However, the court must still ensure that there is adequate support in the record for each statement of material fact. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014). Therefore, the Court only cites to those portions of Plaintiff's Statement of Material Facts that the Court finds are supported by the record. The facts therein will be deemed admitted.

("Pl.'s 56.1"), Dkt. 48-2, ¶¶ 1–2.) Under the Dealer Agreement, Auto Gallery would sell to Plaintiff Receivables, defined as "promissory notes, contracts, security agreements, guaranties, chattel documents, financing instruments and other documents acquired by [Auto Gallery] as part of the financing of the purchase of . . . new and/or used motor vehicles[]" sold by Auto Gallery (*Id.* ¶¶ 3, 7.) For each Receivable, Auto Gallery would earn a commission from Plaintiff. (*Id.* ¶ 25.) Under the Dealer Agreement, Auto Gallery represented that "the new or used motor vehicle described in such Receivable was owned by [Auto Gallery] at the time of the assignment of the Receivable to [C.O.A.F.]"; that "[Auto Gallery] has a legal right to sell, assign, and transfer the Receivables to [C.O.A.F.]"; that "[Auto Gallery] is the sole and unconditional owner of such Receivables and has the right to sell same to [C.O.A.F.]"; that "[Auto Gallery] has sold, delivered, and transferred the new and/or used motor vehicle described in the subject Receivables and has performed all services" to the purchaser of the vehicle; and that "the descriptions of said new and/or used motor vehicle, or any services related thereto are in all respects true and complete." (*Id.* ¶ 8.) Auto Gallery also agreed to repurchase any Receivable for which there had been a breach of representation and to pay Plaintiff's attorneys' fees incurred as a result of such misrepresentation.[3] (*Id.* ¶¶ 4–5.)

---

[3] The relevant provisions of the Dealer Agreement state that:

3. At any time prior to the scheduled maturity of any [R]eceivable, and upon notice and demand from C.O.A.F. [Auto Gallery] hereby agrees to repurchase from C.O.A.F. any Receivable for which there has been a breach of one or more of [Auto Gallery]'s representations and warranties as set forth in Paragraph 1 above. In the event that [Auto Gallery] is required to repurchase any Receivable pursuant to this Paragraph 3, [Auto Gallery]'s repurchase price shall be equal to the total outstanding indebtedness then currently due under the terms of said Receivable.

4. In addition to the covenants contained in Paragraph 3, [Auto Gallery] hereby agrees to defend, indemnify, and hold harmless C.O.A.F. from and against any and all costs, expenses, losses, damages, claims, and liabilities, arising out of or resulting from the failure of a Receivable to be originated by Auto Gallery or

2

Between August 31, 2015 and November 7, 2015, Auto Gallery sold Plaintiff ten Receivables, as to which Auto Gallery misrepresented that it owned and sold the related vehicles. (*Id.* ¶¶ 31–70.) During that same period, Auto Gallery overstated the optional equipment and features on six vehicles for which Receivables were sold to Plaintiff by Auto Gallery. (*Id.* ¶¶ 71–97.) Auto Gallery made these misrepresentations in its Applications and Funding Packages that Auto Gallery submitted to Plaintiff for approval. (*Id.* ¶¶ 18−19.) In total, Plaintiff approved fifteen loans in the amount of $256,872.75 for vehicles sold by Auto Gallery and two of these loans have been charged off in the collective amount of $39,043.25. (*Id.* ¶¶ 100–01.)

## II. Procedural History

Plaintiff filed the instant action on November 23, 2016. (Complaint, Dkt. 1.) Discovery was completed on August 3, 2018. (*See* July 26, 2018 Docket Order.) Plaintiff moved for partial summary judgment on October 23, 2018. (Dkt. 44.) After two extensions of time to file a response, Defendant Auto Gallery still failed to serve its opposition. (*See* Jan. 3, 2019 Docket Order.) The Court granted Plaintiff's request to deem its summary judgment motion unopposed. (*See id.*)

## DISCUSSION

---

transferred and assigned to C.O.A.F. as the case may be, in compliance with all requirements of all applicable federal, state and local laws and for any breach of any of [Auto Gallery]'s representations, warranties and covenants contained in this Agreement. As further explanation of, and not in limitation thereof, costs, expenses, losses, damages, claims and liabilities shall be deemed to include:

. . . .

E) Attorney's fees, court costs or investigation and related costs.

(Dealer Agreement (Exhibit 1), Dkt. 48-4, at 2–3.)

3

**I.      Standard of Review**

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alteration in original) (citation and internal quotation marks omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (citation and internal quotation marks omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

"When a non-movant fails to respond to a motion for summary judgment, the fact that there has been no such response does not by itself mean that the motion is to be granted automatically." *Bey v. Fernandez*, No. 15-CV-7237 (PKC) (ST), 2018 WL 4259865, at *3 (E.D.N.Y. Sept. 5, 2018) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)) (internal quotation marks, brackets, and ellipsis omitted). The Court still must "ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production" and may "rely on other evidence in the record even if uncited." *Jackson*, 766 F.3d at 194 (citation and internal quotation marks omitted).

## II. Plaintiff's Motion for Summary Judgment Against Auto Gallery

Plaintiff seeks to recover against Auto Gallery for breach of contract and fraudulent misrepresentation. Plaintiff also seeks an award of attorneys' fees as provided in the Dealer Agreement and punitive damages for fraud.

### A. Breach of Contract

To prevail on a summary judgment motion alleging breach of contract, "a plaintiff must establish that any reasonable jury would find all the necessary elements of a breach of contract claim[:] (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach." *Menlo v. Friends of Tzeirei Chabad in Israel, Inc.*, No. 11-CV-1978 (JPO), 2013 WL 1387057, at *2 (S.D.N.Y. Apr. 5, 2013) (internal citation, quotation marks, and ellipsis omitted).

Plaintiff has adduced evidence, which is undisputed, demonstrating that the Dealer Agreement is a valid contract. (Pl.'s 56.1, Dkt. 48-2, ¶¶ 1–2; Dealer Agreement (Exhibit 1), Dkt. 48-4.) The Dealer Agreement contains representations made by Auto Gallery that it owned the

Receivables assigned to Plaintiff and the motor vehicles described therein at the time of the assignments and that the descriptions of the subject motor vehicles and related services were true and complete. (Pl.'s 56.1, Dkt. 48-2, ¶ 8.) Although Plaintiff's motion papers do not address the second element of its contract claim, Plaintiff's adequate performance of the agreement can be inferred from the fact that Plaintiff accepted and funded loan applications originated by Auto Gallery, who presumably received the corresponding commissions from Plaintiff. (*See id.* ¶ 25); *see F.D.I.C. v. Malik*, No. 09-CV-4805 (KAM) (JMA), 2014 WL 793552, at *6 (E.D.N.Y. Feb. 25, 2014) (inferring adequate performance from acceptance and funding of loan applications). Plaintiff has also shown that Auto Gallery breached the representations under the agreement by misrepresenting the ownership of ten vehicles and overstating the optional equipment and features on six vehicles. (Pl.'s 56.1, Dkt. 48-2, ¶¶ 31–97.) Plaintiff has submitted Bills of Sale, Certificates of Sale, Finance Documents, Installment Contracts, and affidavits (Exhibits 4−34, Dkts. 48-7−37)—all undisputed—establishing these facts, as well as its claim that it has been harmed by the loans assigned to it by Auto Gallery with this false information. (*See* Pl.'s 56.1, Dkt. 48-2, ¶¶ 28, 100–01.) The evidence in the record thus establishes that there is no material issue of fact with respect to any of the elements of breach of contract.

Although Auto Gallery failed to respond to this motion, it asserted various affirmative defenses in its answer, including the statute of limitations,[4] estoppel, unclean hands, laches, waiver and/or acquiescence, and failure to mitigate.[5] (Answer, Dkt. 13, ¶¶ 106–116.) When a defendant

---

[4] Although Auto Gallery's answer does not specify the applicable statute of limitations, presumably it is referring to New York's six-year statute of limitations for breach of contract or fraud claims. *See* N.Y. C.P.L.R. §§ 213(2), 213(8).

[5] Auto Gallery also stated in its answer that Plaintiff failed to state a claim upon which relief may be granted. (Answer, Dkt. 13, ¶ 106.) Because the Court finds that Plaintiff has shown it is entitled to judgment as a matter of law, the Court rejects this defense.

does not oppose a plaintiff's motion for summary judgment and has not provided any evidence in support of its affirmative defenses, these defenses "without any additional supporting evidence, are legally insufficient to preclude the imposition of summary judgment." *E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882 (SJF) (GRB), 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015). However, even if the Court were to consider the defenses, these defenses are wholly without support in the record.[6]

Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim.

**B.      Fraudulent Misrepresentation**

To prevail on a summary judgment motion alleging fraudulent misrepresentation, Plaintiff must establish that any reasonable jury would find that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *JP Morgan Chase Bank*, 171 F. Supp. 3d at 192 (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004)) (internal quotation

---

[6] The Receivables were approved between August 31, 2015 and November 7, 2015. (Pl.'s 56.1, Dkt. 48-2, ¶¶ 31–97.)  This suit was filed on November 23, 2016 (*see* Complaint, Dkt. 1), well within the statute of limitations and any equitable time restriction under laches. Auto Gallery does not explain or show how it lacked knowledge or reasonably relied on the conduct of Plaintiff, as required under equitable estoppel. *See JP Morgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 186 (S.D.N.Y. 2016).  There is nothing that suggests "immoral [or] unconscionable conduct" on Plaintiff's part to support the defense of unclean hands. *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 89 (E.D.N.Y. 2019).  Nor is there anything in the record suggesting Plaintiff's prior knowledge of the misrepresentations that would support waiver or acquiescence. *See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) ("To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it."); *Ross v. CCS Int'l Ltd.*, No. 98-CV-4090 (RO), 2000 WL 1804103, at *4 (S.D.N.Y. Dec. 8, 2000) (holding that "waiver, acquiescence, and consent require an *intentional* relinquishment of rights"). Finally, nothing in the record suggests that Plaintiff could have acted sooner, so as to support a failure-to-mitigate affirmative defense.

marks omitted). When a fraud claim is alleged in conjunction with a breach of contract claim, New York law requires that the fraud claim must be "sufficiently distinct from the breach of contract claim." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 425 (S.D.N.Y. 2004). "For an existing contract, it does not matter whether the alleged misrepresentation was a statement of present fact or future intent to perform." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12-CV-6017 (KBF), 2013 WL 342922, at *3 (S.D.N.Y. Jan. 18, 2013).[7] "[F]raud damages are meant to redress a different harm than damages on a cause of action for breach of contract. . . . Where all of the damages are remedied through the contract claim, the fraud claim is duplicative and must be dismissed." *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 165 A.D.3d 108, 114 (N.Y. App. Div. 2018) (citing *Mañas v. VMS Assocs., LLC*, 53 A.D.3d 451, 454 (N.Y. App. Div. 2008)).

Plaintiff does not allege additional damages for its fraud claim that would not be recoverable under its breach of contract claim and, therefore, fails to allege an independent fraud claim. Plaintiff's request for punitive damages does not change the result. *See MBIA Ins. Corp.*, 165 A.D.3d at 115 ("A party cannot bootstrap a fraud claim seeking duplicative relief merely by alleging a potential for punitive damages.").

Accordingly, Plaintiff's motion for summary judgment with regard to its fraudulent

---

[7] Plaintiff argues that under the "present fact" doctrine, misrepresentations regarding a present fact—in contrast to a statement of future intent to perform under the contract—are not duplicative of the breach of contract claim. (Plaintiff's Memorandum of Law, Dkt. 48-1, at 20−21.) The case law does not support such a proposition. The "present fact" doctrine applies to material misrepresentations "that induce a party to *enter into* a contract, rather than those statements regarding obligations under an *existing* contract." *Revonate Mfg., LLC*, 2013 WL 342922, at *3 n.4 (citations omitted). In *Revonate*, the court found that the declarations made under a remanufacturing contract that some products were beyond economic repair, when they were salvageable, did not constitute a separate fraud claim. *Id.* at *3. Plaintiff only cites to fraudulent inducement cases and points to no authority that applies the "present fact" exception to statements regarding an obligation under an existing contract.

misrepresentation claim is denied. The Court need not reach a decision on punitive damages under this claim.[8]

### C. Damages

"[P]laintiff[] bear[s] the burden of establishing [its] entitlement to damages even though [D]efendant has not opposed [its] motion." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Local 14-14B v. Cent. Enterprises, Inc.*, No. 11-CV-973 (FB), 2012 WL 4891564, at *4 (E.D.N.Y. Oct. 15, 2012).

#### 1. Repurchase of the Receivables

The Dealer Agreement unequivocally provides that if Auto Gallery breaches one of the required representations, it is obligated to repurchase that loan. Plaintiff's repurchase rights under the Dealer Agreement are triggered upon "notice and demand" by Plaintiff, which Plaintiff did in its July 21, 2016 demand letter to Auto Gallery, as to all fifteen Receivables containing fraudulent misrepresentations. (Exhibit 35, Dkt. 48-38.) "When specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted." *Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, No. 11-CV-4062 (JPO), 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013); *see Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (holding that a provision in a contract providing for injunctive relief "might arguably be

---

[8] Plaintiff does not claim punitive damages under its breach of contract claim. However, to the extent that it does, Plaintiff failed to allege that Defendant's conduct was "part of a pattern directed at the public generally"—a requirement for punitive damages arising out of breach of contract under New York law. *See Catskill Assocs., LLC v. Benza*, No. 08-CV-598 (LEK) (RFT), 2009 WL 1294608, at *3 (N.D.N.Y. May 7, 2009) ("A party seeking punitive damages where the claim arises from a breach of contract must demonstrate that (1) defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the conduct was directed to the plaintiff; and (4) the conduct is part of a pattern directed at the public generally."); *see also IMR Assocs., Inc. v. C.E. Cabinets, Ltd.*, No. 06-CV-5965 (JFB) (ETB), 2007 WL 1395547, at *8 (E.D.N.Y. May 11, 2007) ("[P]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights.").

viewed as an admission by [the defendant] that [the] plaintiff will suffer irreparable harm were he to breach the [contract]"). Therefore, the Court finds that Plaintiff is entitled to enforce its repurchase rights as to the fifteen Receivables. *See Morgan Guar. Tr. Co. of New York v. Bay View Franchise Mortg. Acceptance Co.*, No. 00-CV-8613 (SAS), 2002 WL 818082, at *15 (S.D.N.Y. Apr. 30, 2002) (granting summary judgment and holding that "[the defendant] shall repurchase the [l]oans at the [r]epurchase [p]rice it would have paid had it repurchased the [l]oans on that date, plus interest from that date, plus the costs to [the plaintiff], if any, of holding the [l]oans subsequent to that date"); *Wells Fargo Bank, N.A.*, 2013 WL 372149, at *9 (granting summary judgment to the plaintiff and finding specific performance of repurchase rights appropriate); *U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, No. 12-CV-9412 (SAS), 2014 WL 3368670, at *9 (S.D.N.Y. July 9, 2014) ("Because the parties bargained for specific performance and because repurchase of the Marketplace Loan remains possible, it is the appropriate remedy in this case."), *rev'd on other grounds*, 643 F. App'x 48 (2d Cir. 2016) (summary order), *as amended* (Mar. 18, 2016); *see also Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 502–05 (S.D.N.Y. 2013) (sustaining plaintiff's claim for specific performance to compel defendant to repurchase breaching loans).

The Dealer Agreement also provides the calculation for the repurchase price as "equal to the total outstanding indebtedness then currently due under the terms of said Receivable." (Dealer Agreement (Exhibit 1), Dkt. 48-4, at 3.) The Court finds that this calculation is an adequate method for calculating damages in this case. *Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230 (RPP), 2014 WL 1386633, at *5 (S.D.N.Y. Apr. 9, 2014) (finding "repurchase price calculation [to be] an adequate method for calculating damages"); *see LaSalle Bank Nat'l Ass'n.*

*v. CIBC, Inc.*, No. 08-CV-8426 (WHP), 2012 WL 112208, at *2 (S.D.N.Y. Jan. 12, 2012) (finding that the agreement's repurchase price calculation provided an "adequate method for calculating damages"); *LaSalle Bank Nat'l Ass'n. v. Capco Am. Securitization Corp.*, No. 02-CV-9916 (RLC), 2005 WL 3046292, at *5 (S.D.N.Y. Nov. 14, 2005) ("The parties agreed to a method of calculating the repurchase price. By awarding damages in the amount that [defendant] agreed to pay in the event of breach, the court will make [plaintiff] whole.") (internal citation omitted). Furthermore, "[c]ourts have agreed that an award of monetary damages would . . . not deprive defendant of its side of the contractual repurchase bargain." *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1*, 958 F. Supp. 2d at 501 (internal quotation marks, citation, and alternation omitted).

Plaintiff does not specify whether it seeks monetary damages or injunctive relief. (Plaintiff's Memorandum of Law, Dkt. 48-1, at 14 ("[B]ecause the Dealer Agreement affords [Plaintiff] a return of the repurchase price, it does not matter how the Court characterizes the remedy.").) Courts have held that where repurchase is or may be impossible, the Court may award monetary damages in lieu of the equitable remedy. *See Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 554 (S.D.N.Y. 2014) (finding money damages in lieu of repurchase appropriate and noting that "where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy"). Therefore, the Court grants Plaintiff's motion for Auto Gallery to repurchase the fifteen Receivables noted herein, and, in the alternative, awards Plaintiff monetary damages as calculated under the Dealer Agreement.

However, to the extent that Plaintiff seeks a specific amount of damages in this motion, Plaintiff has not provided sufficient evidence to enable the Court to calculate that amount. Plaintiff has only submitted an affidavit containing a table of the Receivables with their outstanding

amounts, which is insufficient to establish damages. *See Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-01788 (MKB) (RML), 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7, 2016) (finding the production of the initial mortgage and an affidavit stating the outstanding principal by the plaintiff's manager insufficient to establish the amount of damages); *OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656 (NGG), 2015 WL 5706945, at *8 (E.D.N.Y. Sept. 2, 2015) (finding an affidavit of the plaintiff's authorized signatory to be inadequate to establish the amount of unpaid principal), *report and recommendation adopted*, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015). Currently, the Court is unable to verify Plaintiff's calculations because Plaintiff does not indicate what payments have been made on each Receivable.

  2. <u>Attorneys' Fees</u>

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).

Under the Dealer Agreement, Auto Gallery agreed to "indemnify [Plaintiff] against any and all costs [including attorneys' fees] . . . for any breach of any of the Dealer's representations, warranties[,] and covenants." (Dealer Agreement (Exhibit 1), Dkt. 48-4, at 3.) Therefore, Plaintiff is entitled under the contract to reasonable attorneys' fees. *Aurora Commercial Corp.*, 2014 WL 1386633, at *5 (granting attorneys' fees along with repurchase price under similar contract provisions). The fact that the amount of attorneys' fees is yet undetermined does not affect the summary judgment motion. *See U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP*, No. 04-CV-4986, 2005 WL 1875459, at *3 (S.D.N.Y. Aug. 8, 2005) ("[A] dispute over the *amount* of attorneys' fees does not prevent summary judgment.").

**CONCLUSION**

For the reasons set forth above, the Court hereby grants Plaintiff's motion for summary judgment with respect to Plaintiff's breach of contract claim, but denies the motion with respect to Plaintiff's fraudulent misrepresentation claim. The Court directs Auto Gallery to repurchase the fifteen Receivables at issue in this case at the applicable repurchase price as set forth in the Dealer Agreement, or, in the alternative, awards Plaintiff monetary damages in the same amount. Plaintiff is also entitled to reasonable attorneys' fees. Plaintiff shall file a written submission as to the proper calculation of the repurchase price and attorneys' fees by October 30, 2019. Auto Gallery shall respond by November 13, 2019.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2019
      Brooklyn, New York